## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SUPER 8 WORLDWIDE, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SHRI NARAYAN, LLC and Chandubhai Patel,**<br><br>**Defendants.** | Civ. No. 2:14-1034<br>(KM)(MAH)<br><br><br>**OPINION** |

<u>**KEVIN MCNULTY, U.S.D.J.:**</u>

This matter comes before the Court on the unopposed motion of Plaintiff Super 8 Worldwide, Inc. ("SWI") for default judgment against Defendants Shri Narayan, LLC ("Shri Narayan"), and Chandubhai Patel, pursuant to Fed. R. Civ. P. 55(b)(2). (ECF No. 7) This action arises from an alleged breach of a franchising agreement. For the reasons set forth below, I will enter a default judgment in the amount of $268,303.38. Post-judgment interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

### I. BACKGROUND
#### a. The Franchise Agreement and Guaranty

SWI is a South Dakota corporation with a principal place of business in Parsippany, New Jersey. (Compl. ¶1, ECF No. 1) Shri Narayan is a Texas limited liability company with a principal place of business in Houston, Texas. (*Id.* ¶2) Chandubhai Patel, a Texas citizen, is the principal and only constituent member of Shri Narayan. (*Id.* ¶¶3–4)

On or about August 3, 2009, SWI entered into a Franchise

1

Agreement with Shri Narayan. (*Id.* ¶9 (citing Ex. A ("Agreement"))) The Franchise Agreement authorized Shri Narayan to operate a 40-room Super 8 guest lodging facility located at 1437 Keefer Street, Tomball, Texas 77375, Site No. 30978-84629-03 (the "Facility"). (*Id.*)

Section 5 of the Franchise Agreement required Shri Narayan to operate the Facility for a fifteen-year term. (*Id.* ¶10)

Section 7 and Schedule C of the Franchise Agreement specified that Shri Narayan was to make periodic payments to SWI for "royalties, system assessments, taxes, interest, reservation system user fees, and other fees" ("recurring fees"). (*Id.* ¶11)

Shri Narayan was required to pay interest "on any past due amount . . . at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.* ¶12 (citing Agreement Section 7.3))

The Franchise Agreement also required Shri Narayan to submit monthly reports to SWI disclosing, *inter alia*, "the amount of gross room revenue earned by Shri Narayan at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to SWI." (*Id.* ¶13 (citing Agreement Section 3.6)) Shri Narayan agreed to maintain "accurate financial information, including books, records, and accounts," and allow SWI to "examine, audit, and make copies" of these records. (*Id.* ¶14 (citing Agreement Sections 3.6, 4.8))

The circumstances under which SWI could terminate the Franchise Agreement, upon notice to Shri Narayan, include:

(1) [failure to] cure a default as provided in Section 11.1 [requiring payment within 30 days of written notice] . . .

(7) [failure to] pay debts as they arise in the ordinary course of business . . .

(9) [receipt of] two or more notices of default from [SWI] in any one year period (whether or not you cure the defaults)

2

(Agreement Section 11.2; Compl. ¶15)

In the event of a termination, Shri Narayan was required to pay liquidated damages to SWI, which were set at $1,000 per guest room in the Facility. (Compl. ¶¶16–17 (citing Agreement Sections 12.1, 18.1))

In the event of litigation, the losing party was required to pay "all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party." (*Id.* ¶18 (citing Agreement Section 17.4))

Patel provided SWI with a Guaranty of Shri Narayan's obligations under the Franchise Agreement, effective as of the date of the Franchise Agreement. (*Id.* ¶19 (citing Ex. B)) The Guaranty required Patel, upon a default under the Franchise Agreement, to "immediately make each payment and perform or cause [Shri Narayan] to perform, each unpaid or unperformed obligation of [Shri Narayan] under the [Franchise] Agreement." (*Id.* ¶20 (quoting Ex. B)) Because the Franchise Agreement required the losing party at litigation to pay the other party's costs, the Guaranty made Patel personally responsible for these costs as well. (*Id.* ¶21)

### b.   The alleged defaults and termination

SWI alleges that Shri Narayan repeatedly breached its financial obligations to SWI under the Franchise Agreement beginning in 2012. (*Id.* ¶¶22–23)

On January 25, 2012, SWI sent a letter informing Shri Narayan that (a) it was in breach of the Franchise Agreement, because it owed SWI $104,589.98 in outstanding recurring fees; and (b) it had 10 days within which to cure the default, or else the Franchise Agreement might be subject to termination. (*Id.* ¶23 (citing Ex. C))

SWI sent a second letter on April 11, 2012, informing Shri Narayan that (a) it was in default of the Franchise Agreement and now owed $117,904.51 in unpaid recurring fees; and (b) it had 10 days within

3

which to cure the default, or else the Franchise Agreement might be subject to termination. (*Id.* ¶24 (citing Ex. D))

SWI sent a third letter on August 9, 2012, informing Shri Narayan that (a) it was in default of the Franchise Agreement and now owed $137,960.55 in unpaid recurring fees; and (b) it had 10 days within which to cure the default, or else the Franchise Agreement might be subject to termination. (*Id.* ¶25 (citing Ex. E))

In a fourth letter dated November 16, 2012, SWI stated that it had received a letter from Shri Narayan. Shri Narayan's letter informed SWI that Shri Narayan stopped operating the Facility as a Super 8 on October 6, 2012, pursuant to Shri Narayan's Additional Termination Right. (*Id.* ¶26; Ex. F (citing Agreement Section 18.2)) In its letter, SWI told Shri Narayan that Shri Narayan could not exercise the Additional Termination Right until the fifth or tenth anniversary of the opening date of the Facility, and that, in any case, the Additional Termination Right expired because Shri Narayan had failed to cure its default. (*See* Ex. F) However, SWI did acknowledge that October 6, 2012 would be regarded as the termination date of the Franchise Agreement. (*Id.*) It stated that Shri Narayan was required to pay SWI $40,000 in liquidated damages for the premature termination as well as all unpaid recurring fees as of the date of the termination. (*Id.*) As of the date of the fourth letter, Shri Narayan owed an estimated $153,888.87 in unpaid recurring fees. (*Id.*)

SWI now seeks a judgment against Shri Narayan and Patel, jointly and severally, awarding various remedies provided for in the Franchise Agreement. Specifically, SWI seeks: (1) $58,506.74 for liquidated damages plus prejudgment interest on liquidated damages; (2) $208,458.44 for unpaid recurring fees plus prejudgment interest on unpaid recurring fees; and (3) $4,832.45 for attorneys' fees and costs. (*See* Proposed Order, ECF No. 7-1)

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000.

Shri Narayan and Patel have consented "to the non-excusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey." (Compl. ¶6, Ex. A Section 17.6.3, Ex. B)

## II.     STANDARD FOR ENTRY OF DEFAULT JUDGMENT

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 03-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, CIV.A. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be

lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at * 2.

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### III.    DISCUSSION

#### a. Adequate Service & Defendants' Failure to Respond

The prerequisites for default judgment have been met, as Shri Narayan and Patel have been properly served, and each has failed to file an answer or otherwise respond to the Complaint within twenty-one days pursuant to Fed. R. Civ. P. 12(a). The clerk entered default on July 21, 2014.

Service of Shri Narayan, a corporate entity, may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made.

Fed. R. Civ. P. 4(h)(1). New Jersey law states in relevant part that service on a corporation may be made:

> by serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

N.J. Ct. R. 4:4-4(a)(6).

Service of the individual defendant, Patel, may be made under the Federal Rules by

> doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2).

In this case, SWI successfully served Shri Narayan and Patel on March 5, 2014. (*See* ECF No. 5) The time to respond to the Complaint has long since expired. On July 21, 2014, the clerk entered default as to both defendants. Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist, Inc.*, 756 F.2d at 18–19.

### b. Gold Kist factors

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice

7

suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

i.   Meritorious defense (*Gold Kist* factor 1)

As to the first factor, my review of the record reveals no suggestion that SWI's claims are legally flawed or that there is a meritorious defense to them. *See Doe*, 2013 WL 3772532, at *5. Accepting the factual allegations as true, I find that SWI has stated a claim for breach of the Franchise Agreement and the Guaranty.

Under New Jersey law, "[t]o state a claim for breach of contract, [a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).[1]

I am satisfied that SWI has set forth a sufficient claim for breach of contract, and I cannot, from the limited materials before me, see any meritorious defense. SWI has shown the existence of two valid contracts—the Franchise Agreement and the Guaranty. SWI has alleged facts demonstrating that Shri Narayan and Patel are bound by the Franchise Agreement and Guaranty; that they are obligated to pay recurring fees; that their failure to pay recurring fees or cure their default caused the termination of the contract; and that this breach caused SWI to incur damages. There are no facts indicating that SWI breached any of its obligations under either the Franchise Agreement or Guaranty.

Therefore, I cannot discern any meritorious defenses to SWI's

---

[1]      Pursuant to Section 17.6 of the Franchise Agreement (and the Guaranty that incorporates Section 17 of the Franchise Agreement), New Jersey law applies in this diversity action. (Compl. Ex. A, B)

8

allegations.

ii.  Prejudice suffered by party seeking default &
culpability of the parties subject to default (*Gold Kist*
factors 2, 3)

The second and third factors also weigh in favor of default. Shri
Narayan and Patel were properly served on March 5, 2014, over a year
ago, but have failed to appear and defend themselves in any manner. *See
Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*,
CIV. 11-624 JBS/JS, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011)
(finding that "Plaintiffs have been prejudiced by the Defendants' failure to
answer because they have been prevented from prosecuting their case,
engaging in discovery, and seeking relief in the normal fashion."). Absent
any evidence to the contrary, "the Defendant[s'] failure to answer evinces
the Defendant[s'] culpability in [the] default. *Id.* And "[t]here is nothing
before the Court to show that the Defendant[s'] failure to file an answer
was not willfully negligent." *Id.* at *4 (citing *Prudential Ins. Co. of America
v. Taylor*, No. 08–2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)
(finding that when there is nothing before the court to suggest anything
other than that the defendant's willful negligence caused the defendant
to fail to file an answer, the defendant's conduct is culpable and
warrants default judgment)).

The only possible conclusion based on the record is that Shri
Narayan and Patel breached their obligations under the Franchise
Agreement and the Guaranty; that they, not SWI, were culpable for the
breach; and that SWI was prejudiced as a result. Accordingly, I find that
the entry of a default judgment is appropriate.

### c. Remedies

SWI seeks three specific types of compensation, totaling
$271,797.63. Specifically, SWI seeks: (1) $58,506.74 for liquidated
damages plus prejudgment interest on liquidated damages; (2)

$208,458.44 for unpaid recurring fees plus prejudgment interest on unpaid recurring fees; and (3) $4,832.45 for attorneys' fees and costs. (*See* Proposed Order, ECF No. 7-1)

SWI has submitted documentary evidence in support of its demands, while Shri Narayan and Patel have, obviously, submitted nothing. An *ex parte* hearing would serve little additional purpose, so I rule based on the record before me.

I will partially grant SWI's request for recurring fees, as set forth in Section 7 and Schedule C of the Franchise Agreement. (Fenimore Aff. ¶5[2]) SWI has documented recurring fees in the amount of $204,964.19, which includes interest at a rate of 1.5% per month calculated through the termination date of the Franchise Agreement (October 6, 2012). (*See id.* ¶21 (citing Ex. G (itemized statement of recurring fees))) I will award SWI those documented fees. Because the Franchise Agreement was terminated October 6, 2012, I deny SWI's request for fees after that date; specifically, I deny SWI's request for recurring fees for the months of October 2012, November 2012, and March 2013.[3] (*See* Fenimore Aff. Ex. G)

I will also grant SWI's request for liquidated damages. SWI's request for $40,000 is based on Section 18.1 of the Franchise Agreement (setting liquidated damages at $1,000 multiplied by the number of guest rooms in the Facility), and Section 7.3 (establishing a 1.5% interest rate on all unpaid sums). (Compl. Ex. A) The liquidated damages rate of $1,000 multiplied by 40 guest rooms yields a figure of $40,000 under the

---

[2]     Fenimore Aff. = Affidavit of Suzanne Fenimore, dated May 7, 2015, submitted in support of SWI's motion for default judgment, ECF No. 7-3.

[3]     Because liquidated damages exist to compensate SWI for any forecasted recurring fees lost as a result of the premature termination of the Franchise Agreement (Fenimore Aff. ¶¶22–23), SWI may only recover whatever recurring fees were unpaid as of the date of termination of the contract. Otherwise, the liquidated damages and recurring damages amounts would be duplicative in part.

Franchise Agreement. (Fenimore Aff. ¶¶26–28) I agree with SWI that the contractual interest rate of 1.5% monthly applies to this liquidated damages sum. (Compl. Ex. A, Section 7.3) I also agree as to the date liquidated damages began to accrue: November 5, 2012, or 30 days after the date of termination. (Fenimore Aff. ¶28, Ex. F)) Interest thus equals $18,506.74.

The interest is calculated from November 5, 2012 through June 1, 2015, the return date of this motion. The $18,506.74 figure is calculated by multiplying $40,000 by 18% per year, which equals $7,200 in interest per year. That amount is then divided by 365 days to equal $19.73 in interest per day. When the per diem interest of $19.73 is multiplied by 938 days, the interest owed is $18,506.74. (*See* Fenimore Aff. ¶27)

Finally, as to attorneys' fees and costs, I adopt SWI's analysis. SWI has adequately documented its attorneys' fees, which do not seem unreasonable or disproportionate. (*See* Compl. Ex. A, Franchise Agreement, Section 17.4 (giving prevailing party the right to recover reasonable attorneys' fees); Fenimore Aff. ¶29; Couch Cert. ¶¶10–12, Ex. B). I will enter a judgment that includes $3,900.00 in attorneys' fees and $932.45 in costs, for a total of $4,832.45.

IV.    CONCLUSION

For the foregoing reasons, a default judgment will be entered in favor of Plaintiff Super 8 Worldwide, Inc., in a total amount of $268,303.38, to be paid to Plaintiff, along with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

An appropriate order will be entered in accordance with this Opinion.

Dated: July 23, 2015

Kevin McNulty
**United States District Judge**